# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRED L. KING, | CASE NO. 1:10-cv-00878-LJO-SKO |
| Plaintiff, | **FINDINGS AND RECOMMENDATIONS THAT PLAINTIFF'S COMPLAINT BE DISMISSED WITHOUT LEAVE TO AMEND** |
| v. | |
| CORCORAN STATE PRISON, et al., | |
| Defendants. | |
| | **OBJECTIONS DUE: 30 days** |

## I. INTRODUCTION

Plaintiff Fred King ("Plaintiff") is proceeding pro se and *in forma pauperis* with an action for damages under Title VII of the Civil Rights Act of 1964, codified at 42 U.S.C. §§ 2000e *et. seq*. against Corcoran State Prison ("Corcoran") and Walden House, Inc. ("Walden House").[1]

In his Third Amended Complaint ("TAC"), Plaintiff alleges he was discharged from his employment as a counselor at Walden House because Corcoran revoked his security clearance. Plaintiff claims that his security clearance was revoked because of an "investigation b[r]ought on by false allegations made about [his] conduct . . . ." (Doc. 13 at 1.) He asserts that others, who are not

---

[1] It appears that Walden House is a substance abuse treatment facility located on the grounds at Corcoran. Plaintiff alleges he was employed as a counselor at Walden House. (Doc. 13.)

African American, were not terminated from their employment despite being investigated for similar security issues. (Doc. 13 at 1.) Plaintiff also alleges that he was terminated in part because of his "knowledge of corruption and misconduct of officers" at the Department of Corrections and because "it came to light that [he] was once an inmate . . . ." (Doc 13 at 1.) Plaintiff also believes he was singled out because of his race.

## II. DISCUSSION

### A. Screening Standard

In cases where the plaintiff is proceeding *in forma pauperis*, the Court is required to screen each case, and shall dismiss the case at any time if the Court determines that the allegation of poverty is untrue, or the action or appeal is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2). If the Court determines that the complaint fails to state a claim, leave to amend may be granted to the extent that the deficiencies of the complaint can be cured by amendment. *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc).

### B. Failure to State a Claim

In determining whether a complaint fails to state a claim, the Court uses the same pleading standard used under Federal Rule of Civil Procedure 8(a). Under Rule 8(a), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. __, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). "[A] complaint [that] pleads facts that are 'merely consistent with' a defendant's liability . . . 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Further, although a court must accept as true all factual allegations contained in a complaint, a court need not accept a plaintiff's legal conclusions as true. *Id*. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice." *Id*. (quoting *Twombly*, 550 U.S. at 555).

**C.    Analysis**

Pursuant to 42 U.S.C. § 2000e-2(a) ("Title VII"), it is an unlawful employment practice for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." A person is discriminated against when he or she is singled out and treated less favorably than others similarly situated on account of race, for example. *Jauregui v. City of Glendale*, 852 F.2d 1128, 1134 (9th Cir. 1988).

**1.    No Cognizable Claim Against Corcoran State Prison**

Title VII liability is premised upon "some connection with an employment relationship." *Lutcher v. Musicians Union Local 47*, 633 F.2d 880, 883 (9th Cir. 1980). With only limited exceptions related primarily to prospective employers and applicants for employment, the employer charged with discrimination under Title VII must have been the plaintiff's employer at the time of the alleged discrimination for plaintiff to prevail. *See City of L.A. v. Manhart*, 435 U.S. 702, 718 n.33 (1978) (Title VII "primarily govern[s] relations between employees and their employer, not between employees and third parties"). The relationship between the employee and the employer may be direct or indirect. *Lutcher*, 633 F.2d at 883.

There are at least two theories under which a plaintiff may plead an indirect employment relationship with a defendant. First, an employer may be pled as a "joint employer." *EEOC v. Pac. Mar. Ass'n*, 351 F.3d 1270, 1275-77 (9th Cir. 2003). Joint-employer liability under Title VII may be shown where "both employers control the terms and conditions of employment of the employee." *Id.* (internal quotation marks and citations omitted). In considering joint-employer status, the Ninth Circuit applies an "economic reality test" that "considers all factors relevant to the particular situation." *Id.* For example, the Ninth Circuit has considered whether the joint employer (1) supervised the employee, (2) had the power to hire and fire him, (3) had the power to discipline him, and (4) supervised, monitored and/or controlled his work site. *See id.* at 1277; *Anderson v. Pac. Mar. Ass'n*, 336 F.3d 924, 927 (9th Cir. 2003).

Second, a plaintiff may plead an indirect employment relationship by asserting that the defendant interfered with the plaintiff's employment through reference to invidious criteria or on invidious grounds. *Lutcher*, 633 F.2d at 883 n.3; *Sibley Memorial Hosp. v. Wilson*, 488 F.2d 1338, 1342 (D.C. Cir. 1973). If the interfering party has the right to control the "means and manner" of the individual's performance and has "the right to control and direct the work of an individual," then it is likely that an employment relationship exists between that party and the plaintiff. *Lutcher*, 633 F.2d at 883 & n.5 (citing *Spirides v. Reinhardt*, 613 F.2d 826, 831 (D.C. Cir. 1979)).

Here, Plaintiff has not alleged that he had a direct employment relationship with Corcoran; rather, Plaintiff identifies his place of employment as "Walden House." (Doc. 13 at 2.) There are also insufficient facts to indicate that Plaintiff had an indirect employment relationship with Corcoran. Plaintiff has not alleged any facts that indicate Corcoran acted as a joint employer with Walden House under the "economic reality test." For example, there are no facts indicating that Corcoran supervised Plaintiff, had the power to hire or fire him, had the power to discipline him, or supervised or controlled his precise work space. Additionally, no facts are alleged indicating that Corcoran controlled the "means and manner" of Plaintiff's employment, i.e., that Corcoran had control of his work hours, work assignments, supervision, or training. Thus, Plaintiff's Title VII claim against Corcoran for employment discrimination is not viable because Plaintiff has not pled any facts indicating how he had some type of employment relationship with Corcoran.

Further, even assuming an employment relationship was sufficiently pled, it is unclear how Corcoran used invidious criteria in revoking Plaintiff's security clearance.[2] Though Plaintiff states that he was singled out because of his race, he also states that he was terminated because of he knew of the "corruption and misconduct" of Department of Corrections officers, that he was treated differently after the discovery that he had previously been an inmate, and that Plaintiff's termination resulted from an investigation into allegations of his misconduct. (Doc. 13 at 1.) Discrimination because of an employee's knowledge of corruption, previous incarceration status, or an employee's misconduct is not actionable under Title VII. *See* 42 U.S.C. § 2000e-2(a)(1) (it is unlawful to

---

[2] The Court notes that security clearance decisions by *federal* agencies are not reviewable by Article III courts. *Brazil v. U.S. Dep't of Navy*, 66 F.3d 193, 196 (9th Cir. 1995) (judicial review of security clearance decisions by Executives or their agents is precluded in Title VII discrimination actions).

4

discriminate because of race, color, religion, sex, or national origin).  It is unclear whether Plaintiff is alleging that his security clearance was revoked because of his race or based on grounds not actionable under Title VII.

As Plaintiff has failed to adequately allege any type of employment relationship with Corcoran and because it is unclear upon what discriminatory grounds Corcoran revoked his security clearance, there is no cognizable claim stated against Corcoran.

**2.     No Cognizable Claim Against Walden House**

There are no allegations against Walden House contained in the TAC, and Walden House is not named in the caption of the complaint.  Thus, there is no cognizable claim stated against Walden House.

### III. CONCLUSION

Plaintiff's TAC, like his previous complaints, does not allege sufficient facts to support a plausible and cognizable Title VII claim.  Plaintiff has not alleged that Corcoran was his direct employer, or asserted any plausible theory of indirect employment relationship with Corcoran.  It is also unclear whether Plaintiff has alleged that his security clearance was revoked due to his race or some other reason not actionable under Title VII.  Further,  Plaintiff sets forth no facts to support a viable claim against Walden House.  The Court has provided Plaintiff with notice of these deficiencies, and Plaintiff has had three opportunities to amend his complaint to state a cognizable claim but has been unable to do so.  As a result, dismissal without leave to amend is warranted.

### IV. RECOMMENDATION

Based on consideration of the declarations, pleadings, and exhibits to the present motion, the Court RECOMMENDS that Plaintiff's Third Amended Complaint be DISMISSED without leave to amend.

These findings and recommendations are submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304.  Within thirty (30) days of service of this recommendation, any party may file written objections to these findings and recommendations with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The district judge

will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the district judge's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:** **June 8, 2011**             /s/ Sheila K. Oberto
                                                   UNITED STATES MAGISTRATE JUDGE